UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA

v.

JUSTIN JEFFREY AMATO,

                Defendant.
_____

REPORT,
RECOMMENDATION
AND ORDER

09-CR-00308(S)(M)

        This case was referred to me by Hon. William M. Skretny for supervision of all pretrial proceedings [18].[1] Before me are defendant's motions to suppress physical evidence and statements, to dismiss count 1 of the indictment, and for a bill of particulars [11].[2] An evidentiary hearing on defendant's suppression motion was held on January 14, 2009, at which Town of Cheektowaga Police Officer Christopher Lovallo and FBI Special Agent Michael Shaffer testified on behalf of the government. For the following reasons, I recommend that defendant's motions to suppress and to dismiss count 1of the indictment be denied, and I order that defendant's motion for a bill of particulars be denied.

## BACKGROUND

        In an indictment dated September 8, 2009 [8], defendant is charged with receiving and distributing child pornography, in violation of 18 U.S.C. §§2252A(a)(2)(A) (count 1), and

---

[1]     Bracketed references are to the CM/ECF docket entries.

[2]     Defendant has informed the court that all other aspects of his motion are moot.

with possession of child pornography, in violation of 2252A(a)(5)(B) (count 2), arising from a January 28, 2009 search of his computer.

On January 28, 2009 at approximately 9:00 p.m. Officer Lovallo was dispatched to the upper apartment of 58 Claudette Court in Cheektowaga to respond to a complaint about child pornography on a computer [T5, 8; Gov't Ex. 2].[3] Officer Lovallo had been to this address approximately ten days earlier to arrest defendant on an outstanding arrest warrant for defendant [T6]. At that time, defendant was taken into custody, and Officer Lovallo observed the apartment to be "absolutely disgusting" and "filthy" [T6-8]. Defendant did not indicate that he resided with anyone else [T35].

On January 28, 2009, Officer Lovallo arrived at the apartment at approximately 9:20 p.m. [T10; Gov't Ex. 1]. When he knocked, Christina Labarbera[4] opened the door to the apartment, which led into the kitchen [T11-12]. Richard DiBlasi, defendant's stepfather, was also in the apartment [T12, 14]. While standing in the kitchen, Ms. Labarbera informed Officer Lovallo that "the apartment was in her mother's name, that her estranged husband was living there and that she was there to clean and take care of the pets. She indicated that she wanted to take care of the apartment so that her mother could get . . . the security deposit back. She indicated [defendant] was incarcerated" [T15, 19, 32, 47].[5]

---

[3] "T" refers to the transcript of the January 14, 2010 suppression hearing [19].

[4] She is referred to as both Christina and Christine. *Compare* gov't ex. 4 *with* gov't ex. 5.

[5] In fact, defendant's mother rather than Ms. Labarbera's mother, was named on the lease [T65-67].

Ms. Labarbera also told him that "while she was cleaning, she wanted to retrieve a few photographs of her and [defendant's] child in common from the computer . . . . [W]hen she went to retrieve said photographs, . . . she found numerous images of child pornography as well as videos" [T19]. From his location in the kitchen, Officer Lovallo could observe the computer screen, which displayed the Windows logo [T20]. He stated that "she indicated what she had found. She clicked on the computer to show me where the files were" [T20]. "She said these are the videos and then she clicked on another icon and it brought up thumbnails on the screen" [T22].[6] The thumbnails "filled up the entire screen" [T25].

Ms. Labarbara enlarged one of the thumbnails to show a photo of a naked child "engaged in a sexual act or sexual pose", which Officer Lovallo believed to be child pornography [T23-4]. She "may have clicked on a few more images", whereupon he "may have clicked on a few afterwards just to verify that it was in fact child porn" [T24]. Ms. Labarbera stated "this is what I found . . . . keep going . . . .there's more stuff on there . . . . The videos are disgusting" [T26]. Officer Lovallo replied: "there is child pornography on this computer. I've seen enough. I'm going to take it and hold it" [T28]. He seized the computer and took it to police headquarters because he believed it contained evidence of a crime [T28, 29]. Based on his affidavit describing what he had seen on the computer, a search warrant for the computer was subsequently obtained. Gov't Ex.4.

---

[6] A thumbnail is "like a miniature picture so that . . . you can fit a bunch on the screen to see which picture you would want to view" [T23].

ANALYSIS

A.  **Motion to Suppress**

Defendant seeks to suppress the physical evidence derived from the search of his apartment and computer on January 28, 2009, the evidence derived from the subsequent search of his computer following issuance of the search warrant, and his subsequent statements (as fruit of the poisonous tree). Schwartz affirmation [11], ¶¶34-35.

Defendant has submitted an affidavit alleging that he had a reasonable expectation of privacy in his apartment and the computer located therein [13]. The government argues that Officer Lovallo's review of defendant's computer was the result of a private search which destroyed defendant's reasonable expectation of privacy in its contents, or, in the alternative, that Ms. Labarbera had apparent authority to permit a search of the computer. Government's memorandum [20], points I and II.

Turning to the latter argument first, I conclude that Ms. Labarbera had authority to allow Officer Lovallo to enter the apartment, since she had both "access to the area . . . [and] permission to gain access". United States v. McGee, 564 F.3d 136, 140 (2d Cir. 2009). However, that did not give her either actual or apparent authority to consent to the search of the computer. As she told Officer Lovallo, defendant had asked her to come to the apartment to feed his pets, not for any other reason. He also knew that she and defendant were estranged, which would render unreasonable any belief on his part that she could consent to a search of the computer.

However, the Fourth Amendment's protection against unreasonable searches and seizures "is wholly inapplicable to a search or seizure, *even an unreasonable one*, effected by a

private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official." United States v. Jacobsen, 466 U.S. 109, 113-14 (1984) (emphasis added). For purposes of this motion, I assume that Ms. Labarbera's search of the computer was unreasonable, as she had no basis for believing that he would approve of that search under the circumstances.

Nevertheless, once that private search occurred, defendant's reasonable expectation of privacy no longer existed for purposes of Fourth Amendment protection. "Once frustration of the original expectation of privacy occurs, the Fourth Amendment does not prohibit governmental use of the now - nonprivate information . . . . The Fourth Amendment is implicated only if the authorities use information with respect to which the expectation of privacy has not already been frustrated." Jacobsen, 466 U.S. at 117. Officer Lovallo did not access any photos which Ms. Labarbera had not already seen[7] - in fact, she had viewed much more than he did, and suggested that he view the "disgusting" videos, which re refused to do, as he had already seen enough to conclude that the computer contained child pornography and could therefore be seized as contraband. Therefore, his "viewing of what a private party had freely made available for his inspection did not violate the Fourth Amendment." Id. at 119-20.

In fact, since the police could have sought a search warrant based on an affidavit from Ms. Labarbera outlining her recollection of what she had seen on the computer, nothing prohibited them from conducting their own review instead. See Jacobsen, 466 U.S. at 119 ("respondents do not dispute that the Government could utilize the Federal Express employees'

---

[7] While he stated that he may have clicked on a few photos beyond what she had shown him, these were already displayed in thumbnail form on the page which she had opened.

testimony concerning the contents of the package. If that is the case, it hardly infringed respondents' privacy for the agents to reexamine the contents of the open package . . . . The advantage the Government gained thereby was merely avoiding the risk of a flaw in the employees' recollection, rather than in further infringing respondents' privacy").

Therefore, I recommend that defendant's motion to suppress physical evidence - both that observed by Officer Lovallo on January 28, 2009 and that obtained as a result of the subsequently-issued search warrant - be denied.

### B. Motion to Suppress Statements

Since I have recommended that defendant's motion to suppress physical evidence be denied, I also recommend that defendant's motion to suppress his statements (as "fruit of the poisonous tree") be denied.

### C. Motion to Dismiss Count 1 of the Indictment

Count 1 of the indictment charges defendant with violating 18 U.S.C. §2252A(a)(2)(A), which applies to "any person who . . . knowingly receives or distributes . . . any child pornography that has been mailed, shipped or transported in interstate or foreign commerce by any means, including by computer." Defendant moves to dismiss count 1 of the indictment, arguing that 18 U.S.C. §2252A(a)(2)(A) is unconstitutionally vague because it fails to define "receipt", and as such cannot be distinguished from "possession" of child pornography, 18 U.S.C. §2252A(a)(5)(B). Schwartz affirmation [11], ¶19-20, 22-23, 25. Comparing the sentencing ranges of unlawful possession of child pornography (18 U.S.C. §2252A(b)(2)), to

unlawful receipt, defendant argues that the statue "permits arbitrary and discriminatory application because of the disparate sentencing ranges for what appears to be identical conduct. Because there is no obvious distinction between the act of possessing child pornography and receiving it, prosecutors are left with the choice to charge one or the other in any case." Id. at ¶¶21 and 24. The government responds that similar vagueness challenges to §2252A(a)(2)(A) have been rejected. Government's response [12], p. 12.

"A conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." United States v. Williams, 553 U.S. 285, 286 (2008). However, "a statutory provision will not suffer constitutional invalidation merely because of a lack of complete precision". United States v. Marcus, 193 F. Supp. 2d 552, 557 (E.D.N.Y. 2001).[8]

Defendant fails to cite any case holding §2252A(a)(2)(A) to be unconstitutionally vague. The government relies primarily on the Seventh Circuit's decision in United States v. Watzman, 486 F. 3d 1004 (7th Cir.), cert. denied, 552 U.S. 1052 (2007), which rejected a similar argument: "Watzman has not established that §2252A(a)(2) fails either the 'notice' or the 'arbitrary enforcement' tests for unconstitutional vagueness. We have previously rejected the argument that 'the distinction between receipt and possession of child pornography is

---

[8] Other then Judge Arcara's previous decision in United States v. Powers, 2009 WL 2601103, *2 (W.D.N.Y. 2009) (Arcara, J./McCarthy, M.J.) (rejecting analogous argument by defendant's counsel), the only case from the Second Circuit addressing a vagueness challenge to Section 2252A(a)(2)(A) appears to be Marcus. In Marcus, the defendant challenged the statute arguing, *inter alia*, that it did not define what knowledge entails. 193 F. Supp. 2d at 557. However, the court also concluded that "the statute clearly apprises individuals of the nature of the conduct proscribed." Id. at 557-558.

meaningless, because anyone in possession of child pornography must have received it at some time.'" Watzman, 86 F. 3d at 1009. The court explained that "a person who receives child pornography by accident (for example, if he sought adult pornography but was sent child pornography instead) is not guilty of knowingly receiving it, though he is guilty of possessing it if he retains it." Id.

"While the facts of each case will require a jury to determine whether an individual has, in fact, 'knowingly received' obscene matter, the need for such a determination by the jury does not suggest that a statute is too vague. A statute need not spell out every possible factual scenario with 'celestial precision' to avoid being struck down on vagueness grounds." United States v. Whorley, 550 F. 3d 326, 334 (4th Cir. 2008) (finding that the "receives" requirement of 18 U.S.C. §1462 (importation or transportation of obscene matters) was not unconstitutionally vague).

Section 2252A(a)(2)(A) also does not permit arbitrary and discriminatory application. "It cannot be said that the receiving child pornography statute relies on the discretion of those who enforce it to define its terms. We have recognized that all receivers are possessors but not all possessors are receivers, and so the matter of which crime to charge is not simply a product of the prosecutor's whims, as Watzman suggests. Watzman's conduct violated multiple statutes, but this is unremarkable, . . . , and has no bearing on whether the statute is unconstitutionally vague." Watzman, 486 F. 3d at 1010. *See also* Powers, 2009 WL 2601103 at *2; United States v. Miller, 527 F. 3d 54, 63 (3d Cir. 2008) ("The evidence required to establish the intent-element of §2252A(a)(2) may be greater than that required to establish the intent-element of §2252A(a)(5)(B) because, while a person 'knowingly receives' child

pornography will necessarily 'knowingly possess' child pornography, the obverse is not the case."). Therefore, I recommend that defendant's motion to dismiss count 1 of the indictment be denied.

D.      **Motion for a Bill of Particulars**

The circumstances warranting a bill of particulars are limited. A defendant may obtain a bill of particulars only if the requested information is necessary "(i) to enable him to prepare his defense; (ii) to avoid unfair surprise at trial; and (iii) to preclude a second prosecution for the same offense." United States. v. Persico, 621 F. Supp. 842, 868 (S.D.N.Y. 1985). A bill of particulars "should not function to disclose evidence, witnesses, and legal theories to be offered by the Government at trial or as a general investigative tool for the defense". United States v. Henry, 861 F. Supp. 1190, 1197 (S.D.N.Y. 1994). "If the information sought by defendant is provided in the indictment or in some acceptable alternate form, no bill of particulars is required." United States v. Bortnovsky, 820 F. 2d 572, 574 (2d Cir. 1987). "Whether to grant a bill of particulars rests within the sound discretion of the district court." United States v. Panza, 750 F. 2d 1141, 1148 (2d Cir. 1984).

"In deciding a motion for a bill of particulars, the important question is whether the information sought is necessary, not whether it is helpful." United States v. Conley, 2002 WL 252766, *4 (S.D.N.Y. 2002). The "burden is on the defendant to show that non-disclosure of the requested particulars will lead to prejudicial surprise at trial or will adversely affect his rights." United States v. Nicolo, 523 F. Supp. 2d 303, 315 (W.D.N.Y. 2007) (Larimer, J.). I find that defendants have not met this burden.

Defendant seeks a variety of particulars concerning counts 1 and 2 of the indictment, but fails to make *any* showing as to why non-disclosure of this information will lead to prejudicial surprise at trial or will adversely affect his rights. Schwartz affirmation [11], pp. 3-4. Therefore, I order that defendant's motion for a bill of particulars be denied, without prejudice to renewal upon a proper showing.

**CONCLUSION**

For the foregoing reasons, I recommend that defendant's motions [11] to suppress and to dismiss count 1 of the indictment be denied and order that defendant's motion for a bill of particulars be denied, without prejudice to renewal.

Unless otherwise ordered by Judge Skretny, any objections to this Report and Recommendation must be filed with the clerk of this court by May 27, 2010 (applying the time frames set forth in Fed. R. Crim. P. 45(a)(1)(C), 45(c), and 59(b)(2)). Any requests for extension of this deadline must be made to Judge Skretny. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York, "written objections shall specifically

identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." Failure to comply with the provisions of Rule 58.2(a)(3) may result in the district judge's refusal to consider the objection.

**SO ORDERED.**


Dated: May 10, 2010

/s/ Jeremiah J. McCarthy
JEREMIAH M. MCCARTHY
United States Magistrate Judge